(No. 22871.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH SEMENICK, Plaintiff in Error.

*Opinion filed April 17, 1935.*

HENRY, GRODSKY & PARRY, (WILLIAM B. HENRY, and NATHAN GRODSKY, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

After a trial without a jury in the criminal court of Cook county Joseph Semenick was adjudged guilty of larceny of an automobile and sentenced to imprisonment for from one to twenty years. The case comes here for review by writ of error, the sole question being whether the

defendant's guilt, which rested entirely upon the unsupported testimony of two confessed thieves, was sufficient to warrant his conviction.

Joseph Bogdan parked his 1931 Ford automobile in a free parking space near Seventy-ninth street, in Chicago, about 10:00 o'clock on the night of June 3, 1933, and when he returned at about 2:00 o'clock the next morning the automobile was gone. Eight hours later one of his friends discovered the missing car in an alley some distance from where it had been left by its owner. According to Bogdan his wheels had been replaced by older ones, his spare tire and wheel were gone and his tires were missing while other tires which would not fit his wheels were standing alongside. Bogdan did not see the automobile taken and made no attempt to connect the defendant with the crime.

Eight days after Bogdan recovered his car Earl Hannion was picked up by the police as a suspect in another car theft. He had broken into a telephone box the night before and admitted that he had participated in stealing another car on a former occasion. He testified for the People, implicating the defendant and Billie Lane as the other two who had helped him steal Bogdan's car. He said the three were driving around in Semenick's 1929 Ford coach on the evening of June 3 looking for newer tires to put on the Semenick car; that they did not steal the Bogdan car but took only the tires; that after locating the Bogdan car defendant twisted the door open with a wrench and tampered with the ignition so the motor would start, after which he (Hannion) got in the Ford alone and drove it away to Semenick's two-car garage; that upon arriving there both the Semenick and Bogdan cars were driven inside, where, working until almost daylight, the three boys succeeded in interchanging the tires of the two cars. Hannion testified positively that Bogdan's wheels were put back on his car after the tires were removed, and

that the tires formerly on Semenick's car were fitted on Bogdan's car after several hours' work, before Lane drove it over to the alley where it was abandoned.

Billie Lane, the other alleged accomplice, told substantially the same story as did Hannion. Each of them admitted his part in the theft, the tire changing and the abandonment of the car. Both boys implicate defendant as their partner in crime, but their testimony is not corroborated in its essential features by any other testimony in the record. They differ materially from Bogdan, in that they say they stole only the tires and placed Semenick's tires on Bogdan's wheels, while the latter claimed that his wheels, also, had been stolen and that no tires were on the rims when his car was found. Bogdan testified that the wheels found on his car after the theft were black, while the undisputed testimony of defendant and Hannion was that the wheels on the Semenick car were green. The stories of Hannion and Lane are incompatible with that of Bogdan, the only other State's witness. Their testimony was shaken by convincing evidence that the Semenick and Bogdan cars were equipped with different sized wheels, rendering an interchange of tires impossible.

To refute this confusing and somewhat incredible testimony the defendant produced four witnesses—a physician, a garage mechanic, the defendant's father, who was an elevated railway motorman for eighteen years and who owned the Semenick car, and the defendant himself. Two of these were disinterested witnesses, whose testimony was not contradicted and cannot be disregarded. The physician, Dr. Kroll, testified from his office records that the defendant sustained a severe injury to his leg in April, 1933; that he dressed and treated this injury until June 17, 1933; that the defendant was first able to come to his office for treatment on June 3, 1933—the day of the alleged theft of Bogdan's car; that on that date the defendant could not walk without the aid of crutches and had to be car-

ried up the steps to the physician's office. His testimony was corroborated by three witnesses.

The garage mechanic, William Murtagh, testified that on June 3, 1933, he was using half of the two-car garage occupied by the Semenick car; that he had a car in the garage on June 3 and 4 upon which he was working and from which the rear end had been removed, and that the partially dismantled car could not have been taken out of the garage. This testimony further contradicts the story of Hannion and Lane that they drove both the Bogdan and Semenick cars into this garage on the night of June 3 for the purpose of exchanging tires. Murtagh further testified that when he began to use the garage in the latter part of May, 1933, the lock on the door was broken; that to protect his tools he put his own lock on the door and kept the only key in his own possession; that when any of the Semenick family desired to take their car out they came to him for the key, and that on all such occasions he always got the key back at once. He further stated that he had a car in occupancy of half the garage continuously from the latter part of May until June 15; that at no time during this period was the garage empty, as stated by Hannion and Lane, and that he saw Semenick's car daily from May 25 to June 15 and observed no change in its tires or wheels during that time. He stated positively that a tire from a 1931 Ford would not fit a 1929 Ford wheel, the 1931 wheel being two inches smaller. He further corroborated the physician's testimony that the defendant was on crutches with a leg injury during the first two weeks following the 25th of May, 1933.

It is apparent from the foregoing summation of the evidence that the defendant's guilt has not been established beyond a reasonable doubt. His conviction must have rested upon the uncorroborated testimony of two alleged accomplices, whose stories were largely discredited. The testimony of a confessed thief or an accomplice is always

regarded with suspicion, especially if corroborated only in part by the testimony of respectable witnesses. (*People* v. *Looney*, 324 Ill. 375; *People* v. *Lewis*, 313 id. 312; *People* v. *Vehon*, 340 id. 511.) While the weight of the evidence is for the court or jury to determine, yet where the verdict or judgment is palpably contrary to the weight of the evidence, or the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt, it is the duty of this court to reverse the judgment. *People* v. *Holton*, 326 Ill. 481; *People* v. *Rice*, 323 id. 580; *People* v. *Nemes*, 347 id. 268.

The judgment of the criminal court of Cook county is reversed and the cause is remanded.

*Reversed and remanded.*