(No. 41211.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
MORRIS HICKS, Appellant.

*Opinion filed March 24, 1970.*

SAM ADAM and EDWARD M. GENSON, both of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and JOSEPH ROMANO, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE CULBERTSON delivered the opinion of the court:

We here consider two separate appeals, consolidated for purposes of opinion, which have been prosecuted by defendant, Morris Hicks, from judgments of the circuit court of Cook County. The first appeal is from a judgment, predicated on a jury verdict of guilty, convicting him of the murder of Virginia Simmons and sentencing him to the penitentiary for a term of not less than 20 nor more than 50 years; the second is from a judgment which dismissed without a hearing a petition wherein defendant sought relief under the provisions of the Post-Conviction Hearing Act. Ill. Rev. Stat. 1967, ch. 38, par. 122—1 et seq.

Facts necessary to a consideration of the issues raised disclose that in the early morning hours of February 13, 1967, Jacob Simmons and his wife, Virginia Simmons, were shot to death at the Tiger Lounge in Chicago, where defendant had spent several hours dining and drinking with two female companions. Simmons was shot inside the establishment at a crowded bar while his wife was shot on the sidewalk outside where she had followed her husband's

assailant. So far as the record shows, the single eyewitness to the shooting of Virginia Simmons was James Thames, who had just left the lounge. Police were summoned and, on the basis of information gathered, went to defendant's apartment to apprehend him.

When the officers were admitted to the apartment building after ringing a buzzer, defendant was standing on the stairs and when asked if Morris Hicks was there, defendant replied: "I am Morris Hicks. I knew you were coming. I did it." Upon being asked about his gun, defendant led an officer to a bedroom closet where it was retrieved from a coat pocket. As defendant was being driven to a police station, according to the testimony of one of the officers present, he was sobbing and babbling and said words to the effect that "its all over for him, he ruined his life, everything he worked for all his life is gone." About two hours later, Thames was brought to the station and identified defendant as the man he had seen when Virginia Simmons was shot. According to defendant's post-conviction petition, Thames was brought to a room where defendant was sitting alone at a desk, in handcuffs, to make the identification.

Defendant testified on his own behalf at the trial that he had shot Virginia Simmons in self-defense. By his version, she threatened to kill him inside the tavern after he shot Jacob Simmons, followed him outside, and drew a gun from her purse making it necessary for him to shoot in self-defense. Prosecution evidence, however, established that Virginia was shot in the back, that she had nothing in her hands when shot, and that her purse was on the tavern bar.

Referring to his admission of guilt made to the police when they confronted him at the apartment building, and to the incriminating statements attributed to him while driving to the station, defendant asserts that the trial court erroneously admitted two "confessions" into evidence, and compounded the error by failing to hold a "pretrial" hear-

ing as to one of them. Here, as was true in the trial court, it is contended that evidence of defendant's admissions was inadmissible because he had not, prior to making them, been informed of his right not to incriminate himself, or of his right to counsel, in accordance with the dictates of *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Without regard, for the moment, to the issue of whether the commands of *Miranda* made the evidence inadmissible, it is clear that there is no validity to the claim that the court erred in failing to hold a "pretrial" hearing in respect to the admission of guilt at the apartment building.

The record does indeed show that defendant, on the day set for trial, filed a motion to suppress his admissions. But it likewise shows a further request of defendant that the motion be heard jointly with the trial. When the point of trial was reached where the police officer testified concerning the admission made at the apartment, defense counsel neither requested a preliminary hearing, nor objected to the testimony. In light of these failures, defendant cannot complain on appeal. Where an accused fails to object to the introduction into evidence of an admission or confession, its reception into evidence without preliminary proof of voluntariness is proper and not open to review. *People* v. *Blumenshine,* 42 Ill.2d 508, 515; *People* v. *Sims,* 32 Ill.2d 591, 594-595.

Defense counsel did object when the prosecution sought to elicit testimony concerning defendant's incriminating statements made while he was a passenger in the police car, and a preliminary hearing was held which established beyond a shadow of a doubt that the statements had been completely voluntary and not the product of police suggestion or interrogation. Indeed, no contention is made here that the proof permitted any other conclusion. Under the circumstances, and the same would be true in respect to defendant's first admission, the court did not err in admitting the statements into evidence. *Miranda,* as we have previously

pointed out in *People* v. *Shelton,* 42 Ill.2d 490, 492, and *People* v. *Hill,* 39 Ill.2d 125, 130, expressly excepted from its scope voluntary statements of any kind made by an accused, as opposed to admissions elicited by custodial interrogation. *Miranda* v. *Arizona,* 384 U.S. 436, 478; see also: *People* v. *Kaye,* 295 N.Y.S. 2d 81, aff'd 25 N.Y.2d 139, 250 N.E.2d 329; *State* v. *Billings* (Nev.), 436 P.2d 212; *State* v. *Gosser,* 50 N.J. 438, 236 A.2d 377; *Parsons* v. *United States* (6th cir.), 387 F.2d 944.

Defendant next contends that it was error for the court to deny his motion for a substitution of judges, and that his subsequent trial by a judge who was prejudiced against him constituted a denial of due process of law. Facts required to place this contention and subsequent arguments of defendant in a proper perspective disclose that the matter was first assigned to the judge in question on March 20, 1967, the same date that defendant's retained counsel entered his appearance. After various continuances, a motion by defendant to suppress his gun from evidence was heard on October 23 and 24, 1967, the second day being necessary because defendant was granted a continuance to obtain and present two rebuttal witnesses. The motion to suppress was denied and when both sides represented they were ready, trial was set for October 30, 1967.

When court convened on the day set for trial, defendant filed the motion to suppress his oral statements, previously discussed, and also requested that the case be continued to November 20, 1967. As grounds for the latter request it was represented, first, that a witness important to the motion would not be available until such date, and, second, that counsel had not been aware that defendant had made oral statements, or admissions, to the police until hearing testimony given at the hearing on the motion to suppress the gun. When the prosecutor suggested the possibility of a stipulation in order to avoid delay, counsel declined either

to identify the witness or to disclose what the substance of his testimony might be. The court, after ascertaining that counsel had been served on October 9, 1967, with a list of witnesses to oral admissions by defendant and after noting defendant's several demands for trial, denied the motion for continuance. Following a short interval, during which prospective jurors were brought to the courtroom, the court and counsel retired to chambers where defendant unsuccessfully renewed his motion for a continuance and also made an oral motion for a substitution of judges on the ground that he would not be tried fairly because the judge had been unduly "familiar" with, and "intimidated" by, a person who was listed by the prosecution as a prospective witness.

Relevant facts emerging from the discussion which followed the motion for substitution disclose that the person in question, a Mary Washington, although not subsequently called, was intended to be used by the prosecution as a "life and death" witness. Although we find no support in the record, defendant asserts in argument that she was also a relative of the homicide victim. In any event, it appears that she came to the judge's chambers on her own volition at the time of the hearing on the motion to suppress the gun with a request, which was granted, to be allowed to sit in the front of the courtroom. Prior to that, on an occasion when a continuance was granted, she had voiced her objections to the delay and her doubts that defendant would be brought to justice. Counsel now representing defendant on appeal represent that the latter conversation also took place in the judge's chambers. But manifestly, from the tenor of the record, it took place in open court and in the presence of defendant's trial counsel, inasmuch as the latter, in recalling the incident to the court, commented as follows: "A special explanation was made on the record to her at that time." After a conscientious review and appraisal of the circumstances, the judge declined to hold that he had become

prejudiced against defendant, or that he could not fairly and impartially conduct the trial, and denied the motion for substitution.

Section 114—5(c) of the Code of Criminal Procedure of 1963 provides in pertinent part: "* * * any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion." (Ill. Rev. Stat. 1967, ch. 38, par. 114—5(c).) The People, adverting to procedural grounds, assert that the motion here was properly denied because it was not in writing, and because there was no supporting affidavit as the statute requires. (See: *People* v. *West,* 80 Ill. App. 2d 59.) While it is true that lack of compliance might have justified a refusal of the court to entertain the motion, the deficiencies in the motion were not raised below and the procedural requirements of the statute appear to have been waived by court and counsel alike. What is more, our principal concern here is with the issue, fairly presented by the record before us, of whether the judge's participation deprived defendant of the fair trial contemplated by the constitutional guarantees of due process of law.

To bolster his claims of "prejudice" and "unfairness" defendant argues that the court ruled against him on every "important" issue, citing specifically: the refusal to grant defendant a continuation of three weeks; the denial of defendant's motion to suppress the gun; the denial of the motion to suppress defendant's oral statements; and permitting Thames, the identification witness, to testify in rebuttal over defendant's objection. Significantly, however, direct error has been assigned only in respect to the denial of the motion to suppress the admissions, militating greatly against the argument that all of the rulings were the erroneous products of prejudice. From our examination of the record, we do not believe that any of the rulings cited were erroneous, or a breach of judicial discretion. But even if it be assumed that

one, or all, were erroneous, defendant's claim to a denial of due process would not be aided. Due process of law is not a guaranty against erroneous rulings or decisions. *People* v. *Estep,* 409 Ill. 125; *People* v. *Smith,* 30 Ill.2d 622.

In our opinion the judge's conversations with Mrs. Washington, one of which was in open court, did not give cause for his disqualification, or give rise either to unfairness or a probability of unfairness which fatally infected the trial. Most certainly the occurrences relied upon do not support the major premise of defendant's argument here, *viz.,* that the judge "entertained members of the deceased's family in his chambers prior to trial." To say that any involuntary meeting or conversation, no matter how trivial, gives rise to cause for disqualification would present too easy a weapon with which to harass the administration of criminal justice and to obtain a substitution of judges. Measuring by the entire record, we find that defendant received a fair and impartial trial and conclude that his claim of a denial of due process of law is ill-founded.

In connection with the denial of the motion for substitution, defendant has also argued at some length that the court erroneously conditioned defendant's right to a substitution of judges upon a waiver by defendant of his right to renew his motion to suppress the gun. (See: Ill. Rev. Stat. 1967, ch. 38, par. 114—12.) It may be agreed that the record shows that the court at first considered such a course and contemplated such a condition. But the record further shows that it was abandoned and that the ultimate denial of the motion rested on the court's finding that the incidents with Mrs. Washington did not give cause for his disqualification. Accordingly, the error upon which defendant seeks to rely did not occur.

Relying on *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, it was the thrust of defendant's post-conviction petition that the identification procedures followed when Thames identified him at the police station were

558

so unnecessarily suggestive as to deny him due process of law and to render Thames's in-court identification constitutionally inadmissible as a matter of law. But even if the procedures here fell within the ambit of those condemned by *Stovall,* it is manifest that defendant suffered neither prejudice nor a denial of due process and that his post-conviction petition was properly dismissed. Looking to the transcript of his trial, a source which may properly be considered in determining the sufficiency of a post-conviction petition, (*People* v. *Morris,* 43 Ill.2d 124,) it appears that defendant has at all times admitted his identity as the person who committed the homicide, and that he defended against the charge on a theory of self-defense.

Accordingly, the judgments of the circuit court of Cook County, from which appeals have been taken, are affirmed.

*Judgments affirmed.*