THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE NEVILLE, Defendant-Appellant.

Fourth District   No. 13103

Opinion filed September 23, 1976.

Edward M. Genson, J. Samuel Tenenbaum, and Theodore M. Becker, all of Chicago, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (G. Michael Prall and Robert C. Perry, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

In a jury trial Clarence Neville was found guilty of three counts of possessing component parts of motor vehicles with knowledge that the identification numbers had been removed. The defendant was sentenced to 2 years' probation and fined $7,500. The conviction was for a violation of section 4—103(d) of the anti-theft provisions of the Illinois Vehicle Code which makes it a violation for:

> "(d) a person to buy, receive, possess, sell, or dispose of a motor vehicle or other vehicle, or any component part thereof, with knowledge that the identification number of the motor vehicle or other vehicle or any component part thereof having an identification number has been removed or falsified." Ill. Rev. Stat. 1973, ch. 95½, par. 4—103(d).

In 1974, defendant was a licensed auto parts dealer whose business, Neville Auto Parts, was located in Springfield, Illinois. In January and February of 1974 defendant made several visits to the Cut Rate Auto Salvage Company of Oklahoma City, Oklahoma, a junk yard operated by Joe Cecil. On his visit of February 2, 1974, defendant purchased from Joe Cecil various component pick-up truck parts, including the truck cabs from a 1972 green and white Chevrolet, a 1971 maroon Ford, and a 1972 brown Ford. These cabs were missing manufacturer's plates bearing sequential identification numbers whose absence is the basis of the conviction.

Agents of the National Auto Theft Bureau (NATB) had maintained surveillance of Cut Rate Auto Salvage, a suspected headquarters of an auto-theft ring, and specifically for trucks belonging to defendant after being alerted by the Illinois Secretary of State's Junking Certificate Bureau. On February 3, 1974, an agent of the NATB noted two of defendant's trucks leaving the junk yard. Upon request of the Illinois

Secretary of State's office, surveillance of the trucks was maintained from Oklahoma City to Springfield, Illinois.

The cabs were transported to Springfield by defendant and Charles Spoor, an employee of defendant. When Spoor arrived at defendant's place of business he was met by agents of the Secretary of State's office who asked to see and did examine the cabs and the bills of sale for the cabs. The agents noted that identification numbers, usually found on a plate affixed to the chassis of the cabs, had been removed. Thereupon the State investigators went to the State's Attorney's office and procured a search warrant while other agents remained at defendant's business. The search warrant was issued on the affidavits of the investigators that information had been received from the NATB that the cabs were from stolen trucks. When the agents returned with the search warrant they found that defendant had arrived. He stated to the agents at that time: "Them's my parts. I paid good cash for them."

At trial, counsel for defendant admitted in his closing argument that defendant had been in actual possession of the cabs but that he did not know that the vehicle identification numbers had been removed. The only direct testimony of defendant's knowledge concerning the removal of the numbers was that of a self-confessed truck thief, Georgianne Kyser, who testified that defendant had been present during the removal of identification numbers and dismantlement of recently stolen trucks. She also testified that she witnessed defendant giving cash to Joe Cecil who in turn gave the money to one of the truck thieves.

On appeal, defendant challenges his conviction on several grounds; (1) that he had not violated the statute; (2) that the statute is unconstitutional; (3) that he was not proven guilty beyond a reasonable doubt; (4) that his *Miranda* rights had been violated, and (5) that evidence had been improperly admitted into the record.

■■ Dealing with defendant's last contention first, defendant argues that evidence gained through the search of Neville Auto Parts was illegally and unconstitutionally obtained, and the subsequent seizure of the cabs should not have been admitted into the record. Defendant made a pre-trial motion to suppress this evidence but it was denied. At no other time before this appeal did defendant raise these evidentiary objections. It is a well-recognized maxim that the failure to preserve error at trial or in the post-trial motions constitutes a waiver of those objections on appeal. *People v. Curry* (1973), 56 Ill. 2d 162, 306 N.E.2d 292; *People v. Rogers* (1975), 32 Ill. App. 3d 788, 336 N.E.2d 784.

■■ If error is not properly preserved it is waived unless the error complained of constitutes plain error, or involves jurisdictional questions. For the error complained of to be considered plain error, the error must be so prejudicial to defendant that the failure to object is not a waiver.

(*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) We cannot so find in this case.

Two of defendant's proposed grounds for reversal revolve around the definition of "identification number" found in section 4—103(d) of the Illinois Vehicle Code. The defendant first argues that the term "identification number" as defined in section 1—129 governs and thereby precluded his knowing what identification number the section 4—103(d) referred to. Identifying number is defined at section 1—129 of the Illinois Vehicle Code as:

> "The numbers and letters, if any, on a vehicle designated by the Secretary [of State] for the purpose of identifying the vehicle." (Ill. Rev. Stat. 1973, ch. 95½, par. 1—129.)

The defendant contends the Secretary of State has not complied with this statute by failing to designate an identifying number and as a result of that failure he could not possess scienter or knowledge of the crime and, therefore, could not be found guilty.

We disagree. In section 1—101 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 1—101), it is provided:

> "The following words and phrases when used in this Act shall, for the purpose of this Act, have the meanings respectively ascribed to them in this chapter, except when the context otherwise requires and except where another definition set forth in another Chapter of this Act and applicable to that Chapter or a designated part thereof is applicable." (Ill. Rev. Stat. 1973, ch. 95½, par. 1—101.)

In section 4—100 of the Illinois Vehicle Code, the following definition appears:

> "Component part. Any part of a vehicle, other than a tire, having a manufacturer's identification number or an identification number issued by the Secretary of State." (Ill. Rev. Stat. 1973, ch. 95½, par. 4—100.)

Clearly, then, the identification number referred to in section 4—103(d) includes a manufacturer's identification number placed on the truck cab. By this statute the defendant was statutorily apprised of the prohibited act and his argument fails.

Defendant claims that section 4—103(d) is unconstitutionally violative of the fourteenth amendment to the United States Constitution because it is vague in its reference to identification number and thereby fails to give the required notice of the violation. We do not find any merit in this argument. As indicated above, an identification number of a component vehicle part refers to a manufacturer's identification number or to a number designated by the Secretary of State. (Ill. Rev. Stat. 1973, ch. 95½, par. 4—100.) A manufacturer's identification number is clearly a number placed on the part by the manufacturer. A number designated by the

Secretary of State refers to those rare cases where a vehicle has no identification number for some reason. In such cases section 3—209(b)(2) of the Illinois Vehicle Code provides that the Secretary of State may assign a new "identifying number" to a vehicle which has none or whose manufacturer's identifying number has been destroyed or obliterated. Ill. Rev. Stat. 1973, ch. 95½, par. 3—209(b)(2).

In further support of this construction, section 4—107(g) of the Illinois Vehicle Code provides that:

> "(g) During the usual course of business the *manufacturer* of any vehicle shall place an original manufacturer's vehicle identification number on all such vehicles manufactured and *on any component part of such vehicles* requiring an identification number." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 95½, par. 4—107(g).

■■ Clearly, the wording of this paragraph and the other statutory provisions cited mandate a conclusion that "identification number" and "manufacturer's identification number" are equivalent in article 4 of chapter 95½, unless the Secretary of State, in a specific instance, places a new number on a vehicle or part when one is missing. We can find no other acceptable determination of the legislative intent and, therefore, we find that section 4—103(d) is neither vague nor fails to give proper notice of the prohibited act.

The defendant next contends that section 4—103(d) is unconstitutional as placing an unreasonable burden on interstate commerce in violation of article I, section 8, of the United States Constitution.

Defendant cites comparable statutes from other jurisdictions which permit possession of a motor vehicle component part without knowledge that the identification number is defaced, destroyed or missing. Whether a State statute is an undue burden on interstate commerce depends upon a determination of whether the exercise of legitimate State police power outweighs the:

> "* * * national interest in keeping interstate commerce free from interferences which seriously impede it and subject it to local regulation which does not have a uniform effect on the interstate * * * journey which it interrupts." (*Southern Pacific Co. v. State of Arizona* (1945), 325 U.S. 761, 775-76, 89 L. Ed. 1915, 65 S. Ct. 1515.)

This balancing test was further considered in *Bibb v. Navajo Freight Lines* (1959), 359 U.S. 520, 3 L. Ed. 2d 1003, 79 S. Ct. 962, where the Supreme Court held unconstitutional Illinois requirement that special mudguards be placed on all trucks using State highways. In reaching this holding, the court noted its disposition to find constitutional State regulatory acts which are local in nature. It excepted its decision from that rule by stating: "This is one of those cases—few in number—where local

safety measures that are nondiscriminatory place an unconstitutional burden on interstate commerce." (359 U.S. 520, 529, 3 L. Ed. 2d 1003, 79 S. Ct. 962.) Under the facts of *Bibb*, it was determined that Illinois was one of a very few if not the only State to require mudguards on vehicles using its highways, while every other State had either no requirement or uniformly required another type of mudguard. In the instant case, with the exception of Georgia, the removal of the vehicle identification number plate is either prohibited or left to the discretion of the owner and, consequently, only one State statute is in direct conflict with the requirements placed by Illinois law.

■■ We cannot find, under the *Bibb* test, that section 4—103(d) places an undue burden on interstate commerce sufficient to outweigh the valid State concern of protecting against motor vehicle theft.

■■ Defendant next argues that his constitutional right to equal protection under the law, as guaranteed by article I, section 2, of the Illinois Constitution, and the fourteenth amendment to the United States Constitution was violated by Illinois' discriminatory enforcement of section 4—103(d) against used parts' dealers and not against new parts' dealers or insurance companies. New parts' dealers and insurance companies often come into legal possession of unnumbered vehicles and parts. New parts' dealers are not subject to section 4—103(d) when they obtain parts from a manufacturer which have not yet been given an identification number. What is proscribed by section 4—103(d) is the possession, buying, receiving, setting, or disposing of parts when the identification number has been removed or falsified. Since no identification number has yet been given to these new parts, they cannot have been removed or falsified.

■■ Automobile insurance companies frequently come into possession of parts and vehicles that have been wrecked after reimbursing their policyholders or accident victims. Occasionally these parts and vehicles lack required identification numbers due to the nature of the accident. If the possession of parts or vehicles missing identification number is accompanied by the appropriate police report explaining the possession, we can see no prohibited conduct within the legislative intent of section 4—103(d). Of course, both the new parts' dealer and insurance company must comply with section 3—209(b)(2) which permits the Secretary of State to assign a new identifying number to vehicles which do not have such numbers or whose identification numbers have been destroyed or obliterated. Ill. Rev. Stat. 1973, ch. 95½, par. 3—209(b)(2).

Furthermore, we can see no rights of defendant's proposed class of used parts' dealers being violated by the enforcement of section 4—103(d). Equal protection applies only to interference with an existing right: no constitutional right exists which permits the violation of a penal

statute which is non-discriminatory on its face. (*People v. Fort* (1971), 133 Ill. App. 2d 473, 273 N.E.2d 439; *cf. People v. Tillman* (1972), 4 Ill. App. 3d 910, 282 N.E.2d 231.)

■■ In *United States v. Swanson* (8th Cir. 1975), 509 F.2d 1205, defendant, a certified accountant, claimed that the penal provisions of the Internal Revenue Code were being enforced in a discriminatory manner against attorneys and C.P.A.'s *vis-a-vis* nonprofessional persons. Rejecting the argument, the court held that discretionary or discriminatory enforcement of a penal statute was permissible unless the discrimination was based on race, religion, or other suspect or arbitrary classification. Likewise, we find no discrimination in section 4—103(d) nor in the discretionary enforcement of its provisions and defendant's equal protection guarantee, therefore, has not been violated.

Defendant further contends that insufficient grounds existed for a finding of guilt beyond a reasonable doubt because only one witness, Georgianne Kyser, testified to defendant's knowledge of the missing identification numbers. A defendant can be convicted by the testimony of only one witness if the testimony is positive and credible, even though it may be contradicted by the accused. (*People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.) Even though the testimony of Ms. Kyser raises only the inference that defendant had knowledge that the identification number plates had been removed, such inferences are permissible and may be used to reach a verdict or finding by the trier of fact. "The inferences to be drawn from the facts and evidence are for the trial court and unless they are inherently impossible or unreasonable, they should be accepted on appeal." (*People v. Dunham* (1973), 13 Ill. App. 3d 784, 786, 300 N.E.2d 328, 330.) In *People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770, the court reiterated the rule that a defendant may be convicted by circumstantial evidence alone and that the jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstantial evidence: they need be satisfied only that all of the evidence taken together satisfies the reasonable doubt requirement for a finding of guilt. Defendant also questions the credibility of Ms. Kyser on grounds that she was unable to answer several questions at trial concerning the particulars of the incidents she testified to and that she is a self-confessed thief. The failure to remember all the particulars is not fatal to her credibility since approximately 2 years had passed between the trial and the incidents testified to. Consequently, her failure to recall every particular detail of the time is understandable.

Ms. Kyser's self-confessed thief status is not fatal to the lending of credence to her testimony. The Illinois Supreme Court in *People v. Semenick* (1935), 360 Ill. 250, 195 N.E. 671, stated that the testimony of a thief which is uncorroborated by anything else in the record "* * * is

always regarded with suspicion, especially if corroborated only in part by the testimony of respectable witnesses." (360 Ill. 250, 253-54, 195 N.E. 671, 672.) There, however, disinterested witnesses refuted the testimony of thieves that the defendant participated in a crime with them (*cf. People v. Looney* (1927), 324 Ill. 375, 155 N.E. 363), where the court gave the testimony of thieves credibility where there was some corroboration of it.

The Illinois Supreme Court holds:

> "It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses * * *." *Novotny,* 41 Ill. 2d 401, 412, 244 N.E.2d 182, 188.

■■ We find no basis in Ms. Kyser's testimony which would of necessity require this court to reverse the conviction being appealed. The denial of the truth of Ms. Kyser's testimony by the defendant is insufficient to support the overturning of the court's finding as to her credibility and the weight of the evidence. The defendant's protestations of good character and the assertion that he never checked for an identification number are not sufficient in and of themselves to support a reversal on this ground.

■■ Defendant asserts that the introduction of his extrajudicial statement made to a Secretary of State agent before arrest violated his *Miranda* rights. We note that defendant failed to raise this objection any time prior to this appeal; while this objection may be considered waived, we have searched for plain error but find none.

At trial, a State investigator testified as follows:

> "Q. Did you have any conversation with Mr. Neville?
> A. Uh—no, we didn't question Mr. Neville at that time.
> Q. Did you learn who the owner of all these parts was?
> A. Yes, m'am. When Mr. Neville came into the establishment, he asked me what was going on. He said, 'Them's my parts. I paid good cash for them.' "

Volunteered statements not the product of police suggestion or interrogation do not fall within the scope of the *Miranda* rule. In *People v. Mattison* (1971), 132 Ill. App. 2d 1069, 271 N.E.2d 119, the defendant made a spontaneous statement while riding to the police station in a police car. The court upheld its admittance stating that: "The complained of testimony was not the result of custodial interrogation but rather was a volunteered statement as part of the defendant's conversation with the officer and was not in response to inquiries or interrogation by the officer. * * * *Miranda* does not apply to the initial interrogation in which the officer asks general questions nor is it applicable to volunteered statements not produced as a result of in-custodial interrogation." (132 Ill.

App. 2d 1069, 1071, 271 N.E.2d 119, 120. See also *People v. Hicks* (1970), 44 Ill. 2d 550, 256 N.E.2d 823.) In the case at bar, defendant's statement was properly admitted into evidence since it was volunteered and not the product of police suggestion or interrogation.

Defendant further argues that his statement was made in response to a custodial investigation since the investigation had focused on him as indicated by the prior surveillance placed on his activities. In *Beckwith v. United States* (1976), 422 U.S. 1006, 48 L. Ed. 2d 1, 96 S. Ct. 1612, a tax evasion suspect was interrogated by Internal Revenue Service agents at defendant's home. The court held that statements made in response to questions are admissible even though *Miranda* warnings were not given. Although the investigation had "focused" on accused, the interrogation was noncustodial and thereby defendant's statements were admissible at trial. See also *People v. Weinstein* (1970), 46 Ill. 2d 222, 263 N.E.2d 62, where an extrajudicial statement was held to be voluntarily made even when it was made upon the confrontation of the defendant with evidence of the crime. *Accord, People v. Fischetti* (1970), 47 Ill. 2d 92, 264 N.E.2d 191; *People v. Stansberry* (1971), 47 Ill. 2d 541, 268 N.E.2d 431, *cert. denied*, 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121.

Likewise, in the case at bar, defendant was being investigated but had not been taken into custody and his statement was volunteered. Therefore, we hold the statement was properly admitted into evidence.

In conclusion we hold that section 4—103(d) is not unconstitutionally vague, nor a burden on interstate commerce, nor that its enforcement violates the fourteenth amendment to the United States Constitution. Further we find that defendant did violate section 4—103(d) and was proved guilty beyond a reasonable doubt, and that the evidentiary objections not raised at trial or post-trial were waived. Accordingly, we affirm the decision of the trial court.

Affirmed.

CRAVEN, P. J., and GREEN, J., concur.