THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN M. KLEIN, Defendant-Appellant.

Fourth District   No. 4—82—0466

Opinion filed June 16, 1983.

Daniel D. Yuhas and Jerome McGuire, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles H. Burch, State's Attorney, of Hardin (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:

Pillage on the Mississippi.

A modern day brigand boarded a moored vessel, plundered the craft, and made off with the spoils.

Burglary and theft—jury—guilty—six years.

We affirm.

On Sunday, August 9, 1981, the Williams family—who reside in Missouri—went on a family outing. They sailed their boat, a 25-footer with an enclosed cabin that sleeps five persons, across the Mississippi River to Royal Landing in Calhoun County, Illinois. Before disembarking, Mr. Williams placed his wallet in his wife's purse and put the purse in the V-berth of the boat. The family spent four to five hours at Royal Landing swimming and picnicking. They were about 50 yards from their boat, but could not always see it, as their vision was partially blocked by a clump of bushes. The members of the family occasionally returned to the boat to retrieve food or drink or to use the bathroom facilities on board. They noticed nothing untoward at these times.

Sometime between 5 and 6 p.m., Mr. and Mrs. Williams and their daughter boarded their boat and sailed for home. When they reached port, they discovered that the purse and wallet which had been in the V-berth were missing. Mr. Williams and his family again set sail for Royal Landing and, upon their arrival at approximately 8 p.m., they found the beach deserted. A search of the area turned up Mrs. Williams' purse (which had been pushed down in the mud some 30 to 40 feet from where the boat had been moored earlier in the day), but was otherwise unsuccessful.

Meanwhile, unbeknownst to the Williams family, conservation police officers were at another area of Royal Landing investigating a report of a vehicle parked in a restricted area. Officers Will, Stumpf,

and Ulery had arrived at the landing at 7:30 p.m. The officers observed a white Chevy pickup stuck in the sand in a restricted area. Five persons, including defendant John Klein, were with the disabled vehicle. All five appeared to be intoxicated. When Will and Stumpf attempted to ascertain ownership of the truck, the five were initially uncooperative, but Dan Harwood eventually claimed that the truck was his. Harwood gave the officers permission to search the cab of the truck for the keys to its ignition. In the course of this search, seven credit cards, in the names of Glenn and Jacqueline Williams, were discovered under a loose piece of carpeting on the floor of the truck. Klein initially explained the presence of the cards by stating that they belonged to a friend of his.

Following a license check of the white Chevy, which revealed that its plates were registered to a 1974 El Camino owned by Glenn Jolly of Florissant, Missouri, Klein, his companions, and the truck were taken to the Calhoun County Jail. At this point, the police obtained a phone number for Glenn Williams and placed a call. The phone rang at the Williams home just as the family was returning from their second trip to Royal Landing.

After ascertaining that the credit cards had been stolen, Officer Will administered *Miranda* warnings to Klein and questioned him about the cards. Klein indicated that he had found a wallet on the beach, removed the cards, put them under the carpet on the floorboard of his truck, and threw the wallet into the water. At this point, the police also learned that the truck they had impounded was registered to defendant, not Dan Harwood. Klein also informed the police that no one saw him find the wallet or put the cards in the truck.

The following morning, Mr. Williams returned to Calhoun County and identified the credit cards as belonging to his wife and himself. Williams also returned to Royal Landing where he found his wallet and the rest of his cards in some brush 200 yards from where his boat had been moored the previous day. The brush was in a direct line between the boat and where Klein's truck had been stuck.

Klein was charged with burglary and theft and posted bond. Following his conviction, he was sentenced to six years' imprisonment for burglary and 364 days for theft. His bond was also ordered forfeited when it was shown that he had been arrested for bank robbery in Missouri. Klein argues before this court that he was not proved guilty beyond a reasonable doubt of burglary and that the credit cards seized from his truck should have been suppressed. He also alleges error in ordering his bond forfeited.

I

█ The question of whether the State sustained its burden of proof on the burglary charge turns on whether the jury should have been allowed to infer guilt from Klein's exclusive possession of recently stolen property. This subject was recently addressed by our supreme court. The inference is only permissible if: (1) there is a rational connection between possession and participation; (2) guilt of burglary more likely than not flows from possession; and (3) there is evidence which corroborates the inference. (*People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.) The same evidence will apparently satisfy all three prongs of the test. See *People v. Johnson* (1982), 103 Ill. App. 3d 564, 431 N.E.2d 1381.

█ There is no doubt that those three prongs were satisfied in this case. An explanation of possession given by a defendant which is not credible or indicates dishonesty will justify application of the presumption. *Housby; People v. Felters* (1982), 105 Ill. App. 3d 1066, 433 N.E.2d 368; *Johnson; People v. Bailey* (1982), 103 Ill. App. 3d 503, 431 N.E.2d 723.

Here, Klein gave conflicting stories explaining his possession of the credit cards and both stories were inconsistent with the physical evidence. Klein's explanation that he found the wallet on the beach and did not attempt to locate its owner—along with the fact that the credit cards were secreted under carpeting on the floor of his truck—indicates dishonest possession. Compare *People v. Ross* (1981), 103 Ill. App. 3d 883, 431 N.E.2d 1288, which reversed the defendant's burglary conviction in view of his explanation that he found the stolen stereo in an alley (which contained numerous articles of apparently abandoned property) and the fact that he did not attempt to conceal the stereo, but had it in plain view in the open trunk of his car.

Additionally, the burglary in this case occurred sometime between 12 noon and 5 p.m. on August 9, 1981. Klein was found to possess credit cards stolen in the burglary at 7:30 p.m. on the same day. At the time, Klein was only 250 to 300 yards from where the burglary had occurred. Other items taken in the burglary were found in a direct line between where the burgled boat had been moored and where Klein was arrested.

In *People v. Phoenix* (1981), 96 Ill. App. 3d 557, 421 N.E.2d 1022, this court ruled that where the defendant testified that he purchased the stolen goods and there was no other evidence corroborating the defendant's guilt of burglary, there was not sufficient evidence to prove beyond a reasonable doubt that the defendant was guilty. The situation in the case at bench, however, is distinguishable from the

situation in *Phoenix.* There, the defendant offered one explanation for his possession of the stolen goods—he purchased it. Here, as we noted earlier, Klein gave conflicting explanations for his possession of the credit cards. First, he said they belonged to a friend; later he said that he had found them on the beach. Inconsistent explanations of the possession of stolen property give rise to a reasonable inference that the defendant's story is false and provide sufficient corroboration of the defendant's participation in a burglary. (*Bailey; Johnson.*) Therefore, it was not error to allow the jury to make the inference, and Klein was proved guilty of burglary beyond a reasonable doubt.

## II

■ Just prior to trial, Klein moved to suppress the seven credit cards found in his truck on the grounds that they were the fruit of a nonconsensual search conducted without a warrant and without probable cause. The trial judge denied the motion, and defendant made no further objection to the admission of the cards—either at trial or in a post-trial motion. We therefore consider any error to have been waived. *People v. Neville* (1976), 42 Ill. App. 3d 9, 355 N.E.2d 179; accord, *People v. Stark* (1978), 59 Ill. App. 3d 676, 375 N.E.2d 826.

Even if the issue were properly before us, we would decline to reverse. A trial court's decision on a motion to suppress is presumptively correct and should not be disturbed unless it is manifestly erroneous. (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) The court below found that the search here was incident to a lawful arrest. We conclude that such finding was not manifestly erroneous.

■ A warrantless search of an accused—and areas within his control—is proper where (1) the police have probable cause to arrest, and (2) a custodial arrest is actually made (whether or not one is mandated). (See *Gustafson v. Florida* (1973), 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488.) Whether or not a custodial arrest is made depends not on the label attached to police action, but on the degree of intrusion made upon interests protected by the fourth amendment. See *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248.

There can be no doubt that there was probable cause to arrest here. Defendant's vehicle was in a restricted area in violation of the laws of this State. The facts also tend to support a finding that a custodial arrest was made prior to the search which yielded the credit cards sought here to be suppressed. Some effort was made to keep the defendant and his four companions from "wandering off" while they were at Royal Landing. Officer Will indicated that he intended

to take defendant's vehicle into custody at the time he began to look for its keys. And, it is of no minimal consequence that defendant was actually taken into custody *before* it was known that the credit cards he possessed were stolen. The actions of the officers in this case were reasonable.

■ Furthermore, the officers had every reason to believe that they had the owner's consent to search the cab of the truck. When Harwood claimed ownership of the truck and gave the officers permission to search the cab, Klein was there, heard Harwood's consent to the search and did not object. Klein cannot now argue that the search was illegal because he did not give his consent.

### III

■ We do agree, however, that it was error to order forfeiture of Klein's bond. Forfeiture is appropriate only where a defendant fails to appear, and such was not the case here. The State concedes error and, on the authority of *In re E.H.* (1979), 78 Ill. App. 3d 854, 397 N.E.2d 571, we reverse.

Conviction and sentence affirmed, order of bond forfeiture reversed.

GREEN and MILLER, JJ., concur.