THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STEVEN BRYANT, Defendant-Appellant.

Fifth District No. 83—138

Opinion filed February 7, 1985.

Randy E. Blue and Larry R. Wells, both of State Appellate Defender's
Office, of Mt. Vernon, for appellant.

Robert W. Matoush, State's Attorney, of Salem (Kenneth R. Boyle,
Stephen E. Norris, and Susan M. Young, all of State's Attorneys Appellate
Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Following a jury trial in the circuit court of Marion County,
Steven Bryant, defendant, was convicted of burglary and sentenced to
seven years in prison. On appeal, defendant argues, among other
things, that he was not proved guilty beyond a reasonable doubt. We
agree, and reverse defendant's conviction.

The evidence offered by the State established that Elmer Harris,
custodian of the Lincoln School in Centralia, went to work at about 7
a.m. on November 30, 1981, and found that a window in the special
education room of the school had been broken. Examination of the in-
side of the building revealed that various items, including food, a tool
box, and a television set, had been taken from the school. On the
ledge outside of the broken window, Harris found a yellow button. On
cross-examination, Harris testified as follows:

"Q. So if it hadn't been for the fact that you noticed the
wind was blowing the blind back and forth, kind of moving that
blind, you probably wouldn't have noticed that button on the
outside ledge, would you?

A. No.

Q. You wouldn't have taken a look at the window and noticed the button?

A. If I hadn't seen the glass on the floor.

Q. So the first time you noticed that button there was that Monday morning, the 30th of November?

A. Yes.

Q. If that blind was closed on that Sunday morning, chances are it would have been closed the preceding Saturday morning when you made your rounds, wouldn't it?

A. Yes.

* * *

Q. In fact, that button could have been there for quite some time and during the course of your regular duties, you wouldn't have noticed that button was there?

A. You're right, yes."

On redirect examination, Harris testified:

"Q. Well, what I'm saying—what I'm asking, you're standing there cleaning the window, the inside of the window, and the blinds are open. Now, in that process, wouldn't you see a button on the ledge if it was there?

A. I would clean the inside of the ledge. I don't clean the inside of the windows all the time. Take a dust cloth and wipe along the ledge. I couldn't say whether it was there or not.

Q. Not asking you if in fact it was there. I'm asking you if—would it be fair to say that if it was there, you would have seen it in the process of cleaning the ledge?

A. More than likely."

Arland Speidel, a police officer for the city of Centralia, testified that he was aware that a yellow button had been found at the scene of the Lincoln School burglary. Speidel indicated that on December 2, 1981, he was asked to pick up defendant for questioning, and found defendant that same day playing basketball at the community center. When Speidel told defendant that Captain Edmundson of the police department wanted to talk to him, defendant indicated that he had to get his coat before going with Speidel. Defendant then picked up a long green coat with yellow buttons, two of which were missing. Speidel then brought defendant to the police department, and turned him over to Officer Simer and Captain Edmundson. Officer Speidel testified that the button found on the Lincoln School window ledge and buttons on defendant's coat looked "just alike," in that all of the buttons were "beat up" and had paint chipped off of them. Officer Si-

mer corroborated this testimony by describing the buttons as looking "exactly the same."

Additional evidence presented by the State concerned the recovery of a television taken during the Lincoln School burglary. Lori Sharkey, who was pregnant with defendant's child, testified that she and Lawanda Barnes shared a house at 607 North Maple in Centralia, and that defendant came over to visit her "every now and then." According to Ms. Sharkey, Officer Simer and Captain Edmundson came to the 607 North Maple house on December 3, 1981, in order to get some items belonging to Mike Grady, who had admitted purchasing numerous items with bad checks. After recovering Grady's property, Simer and Edmundson spoke to Ms. Sharkey about the stolen television; precisely what was said is in dispute. Ms. Sharkey testified as follows:

"Q. Did they ask you a question about a T.V.?

A. Yes.

Q. What did they ask you?

A. Told me Steve Bryant had sent me over for some belongings. I said, what? They started naming them. Said a T.V. I said, 'There it is.'

Q. After they said that, you told them, 'There it is'?

A. Yes.

Q. And pointed to a T.V.?

A. Right.

Q. And that T.V. was located in your bedroom, isn't that true?

A. Right.

Q. What did the Officers do after you told them where the T.V. was?

A. He looked at the—

Q. Serial number?

A. Yes, the serial number.

Q. And then what did the officers do?

A. He took it."

Ms. Sharkey also testified that she did not know how the television got in her room, and that the house had broken locks and could be entered without a key. On cross-examination, Ms. Sharkey indicated that her responses to the officers' questions were based on the assumption that they knew the television belonged to defendant, and not upon any knowledge she had regarding who owned the television. Ms. Sharkey also testified that Mike Grady was at her house "about every day" during November of 1981, and that Grady brought stolen

merchandise into the home. Moreover, according to Ms. Sharkey, defendant, who was no longer her boyfriend during November and December, seldom stayed at her house, while quite a few other people were in and out of the house during that time period.

Officer Simer and Captain Edmundson offered testimony regarding their conversation with Lori Sharkey at 607 North Maple. Simer testified that he asked Ms. Sharkey, "What about the T.V. Steven Bryant brought to the house and left?" and that she responded, "It's in the other room." Edmundson testified that he heard Simer ask Sharkey "about a T.V. that Steve Bryant might have possibly left there from Lincoln School."

Defendant offered the testimony of three witnesses, all of whom indicated that defendant was at the home of Bonnie Robinson, mother of one of his children, during the evening of November 29, 1981.

In reviewing the jury verdict finding the defendant guilty, we are obligated not only to carefully consider the evidence, but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and is not sufficient to create an abiding conviction that defendant is guilty of the crime charged. (*People v. Ash* (1984), 102 Ill. 2d 485, 492-93, 468 N.E.2d 1153.) Upon careful examination of the record here, we are compelled to conclude that defendant was not proved guilty beyond a reasonable doubt. The two principal facts tending to connect defendant with the crime—discovery of the button on the window ledge and recovery of the television from Lori Sharkey's home—simply do not establish beyond a reasonable doubt that defendant committed the offense. While the State points out that the button found on the window ledge was unusual and exactly like the buttons on defendant's coat, the clear thrust of custodian Harris' testimony was that he could not say when the button got on the ledge. In analyzing the sufficiency of fingerprint evidence in burglary cases, our supreme court has held that such evidence "must have been found in the immediate vicinity of the crime under such circumstances as to establish beyond a reasonable doubt that the fingerprints were impressed at the time the crime was committed." (*People v. Rhodes* (1981), 85 Ill. 2d 241, 249, 422 N.E.2d 605.) Applying a similar analysis here, we must conclude that, even if the button was distinctive enough to support the conclusion that it came from defendant's coat, the evidence was not sufficient to establish that the button fell onto the ledge during the commission of the burglary. Finally, recovery of the television in the house shared by Lori Sharkey and Lawanda Barnes does not, even when considered along with the evidence regarding the button, establish defendant's guilt beyond a

536

reasonable doubt, where the evidence showed that the house was visited almost daily by a person who brought in unlawfully obtained merchandise, that the locks to the house were broken, and that defendant stayed there infrequently.

For the foregoing reasons, the judgment of the circuit court of Marion County is reversed.

Reversed.

KARNS and KASSERMAN, JJ., concur.