THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL CARTER, Defendant-Appellant.

First District (5th Division)   No. 1—87—2139

Opinion filed May 4, 1990.

Randolph N. Stone, Public Defender, of Chicago (Edwin A. Burnette, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Gayle L. Terry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Following a bench trial, defendant, Michael Carter, was found guilty of burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—1) and sentenced to six years' imprisonment. On appeal, he contends that the State failed to prove him guilty of burglary beyond a reasonable doubt. We affirm.

Detective Robert Browne testified on behalf of the State that at 5:30 a.m. on July 26, 1986, he and his partner responded to an alarm that had been activated in a liquor store, located one-half block away from them. When they arrived at the store, the burglary alarm was still being transmitted. At the store, Browne noticed that a window had been broken. He then looked down the street and saw defendant walking with an object in his hands. Defendant was approximately one-half of a block away from the store when Browne saw him. Browne followed defendant across a parking lot and into an alley. When defendant saw Browne approach him, defendant stopped walking. Browne saw that defendant's hands were bleeding and that he was carrying a case of Richards Wild Irish Rose wine. He then arrested defendant and drove him back to the liquor store. When they arrived at the store, Browne discovered that there was also blood on the window and on two coolers placed by the window. Browne further testified that when the owner of the store arrived, he identified the

case of wine recovered from defendant as one of the cases that had been stolen from his store.

On cross-examination, Browne testified that he did not see defendant enter or leave the liquor store and that he did not take samples of the blood he discovered at the store for testing. He also acknowledged that he failed to state in his report that there was blood on the window and cooler.

The parties stipulated that if the owner of the liquor store, Abraham Ali, were to testify, he would state as follows: At 8:30 p.m. on July 25, 1986, he locked the burglary gates and window of his shop. When he left his store, the burglary gates covering the west-side window were locked and that window was not broken. At 5:30 a.m., the next day, the police department informed him that there had been a forced entry into his store. When he arrived at the store, the gates he had earlier locked had been removed and the window broken. He inspected his store and found that five cases of Richards Wild Irish Rose wine had been stolen. He identified the case of wine found in defendant's possession as one of the cases stolen from his store. He did not give defendant or anyone else permission to enter his store.

Defendant testified on his own behalf that he was on his way to seek employment at a "day labor" service in the early morning hours of July 26, 1986, when he saw a man walking out of a gangway with boxes. That man placed the boxes on the sidewalk. When the man left, defendant picked up one of the boxes and walked away. When he walked into an alley, he was stopped by Detective Browne. Defendant admitted being caught with a case of wine but denied taking it from the store.

On cross-examination, defendant testified that he left his house, which was about two blocks from the liquor store, at 4:40 a.m. He further testified that he did not get a close look at the man who purportedly left the cases of wine on the sidewalk. Moreover, he stated that his hands were bleeding because he had been stabbed 30 times by two men at about 3 a.m., that same day.

At the conclusion of the evidence, the State proffered certified copies of defendant's prior convictions, which revealed that defendant had two burglary convictions and had once been convicted of attempted burglary. The trial court found defendant guilty of burglary and sentenced him to six years' imprisonment. Defendant appeals, contending that he was not proved guilty of burglary beyond a reasonable doubt since there was no evidence that the blood found at the store was his blood.

■■ ■ Generally, in cases involving exclusive possession of re-

cently stolen property, the question of whether the State sustained its burden of proving defendant guilty depends on whether it was proper for the trier of fact to infer guilt from the defendant's possession of recently stolen property. (*People v. Mallette* (1985), 131 Ill. App. 3d 67, 475 N.E.2d 237.) As articulated in *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, the inference is proper if the following three-part test is satisfied: (1) there is a rational connection between defendant's possession of stolen property and his participation in the burglary; (2) his guilt of burglary is more likely than not to flow from his unexplained possession of burglary proceeds; and (3) there is evidence corroborating the defendant's guilt. (*People v. Housby* (1981), 84 Ill. 2d 415, 424, 420 N.E.2d 151, 155.) The same evidence may be used to satisfy all three parts of the *Housby* test. *People v. Klein* (1983), 115 Ill. App. 3d 582, 450 N.E.2d 1268.

■ Our examination of the record reveals that all three parts of the *Housby* test were satisfied, and therefore, the inference of the defendant's guilt by the trier of fact was proper.

The record discloses that there was a rational connection between defendant's possession and his participation in the burglary. Although there is no evidence of the precise time at which the burglary occurred, the trial judge could have reasonably inferred that the burglary occurred moments before Detective Browne arrived at the store in view of Browne's testimony that, at 5:30 a.m., he was responding to an alarm that a burglary was in progress at a store only one-half block away, and that the alarm was still being transmitted as he arrived at the store site. The short period of time it took Browne and his partner to get to the store, coupled with the close proximity of defendant to the store, supports that inference.

The record also discloses that once he arrived at the store, Browne remained seated in the squad car and immediately noticed that there had been forced entry into the store because a window had been smashed. Browne momentarily turned his head in a westerly direction and saw defendant carrying an object, subsequently found to be one of the cases of wine that had just been stolen from the liquor store. The defendant was only one-half block away from the store at this point. The short time span between the burglary, which can be inferred to have occurred shortly before the detectives arrived at the store, and the subsequent discovery of the burglary proceeds in defendant's possession, coupled with the proximity of defendant to the burglarized store, sufficiently established a rational connection between defendant's possession and his participation in the burglary.

The foregoing evidence is also sufficient to satisfy the second part

of the *Housby* test, requiring that defendant's guilt more likely than not flow from his unexplained possession of recently stolen property. Moreover, in explaining his possession, defendant testified that he picked up a case of wine that had been stolen by another. When that explanation is considered in conjunction with defendant's own testimony of the time at which he left his home, coupled with testimony of the proximity of his house to the burglarized store, a trier of fact could reasonably conclude that defendant's explanation was false. Defendant testified that he left his home at 4:40 a.m. to seek employment. Defendant, however, was subsequently discovered with stolen property, only 2½ blocks away from his house, 50 minutes after defendant testified he left his house. If the defendant in fact left his house at 4:40 a.m., he would have gotten farther than two blocks from his house within that 50-minute time period. Defendant's explanation failed to reasonably account for his actions or whereabouts within the 50-minute time lapse between leaving his house and being found with the stolen property.

This record amply supports a conclusion that defendant's proximity to the store when he was found in possession of the stolen property, coupled with his implausible alternative explanation, made it more likely than not that his guilt flowed from his possession.

■ As indicated earlier the same evidence, if otherwise sufficient, can be used to satisfy each of the three parts of the *Housby* test. Corroborative evidence here included not only the very short time span between the burglary and the discovery of defendant in possession of the burglary proceeds, but also the implausibility of defendant's explanation. See *Housby*, 84 Ill. 2d at 430-31, 420 N.E.2d at 158.

In addition to the foregoing, there was other corroborative evidence of defendant's guilt. Detective Browne testified that when he stopped defendant, he noticed that defendant's hands were bleeding, and when he returned to the store, he also discovered that there was blood on the broken window and adjacent cooler. Browne failed to include in his report that he discovered blood on the window and cooler. However, the fact that Browne's report did not state that he discovered blood on the window and cooler did not preclude the trial court from considering his testimony on this subject. *People v. Spain* (1980), 91 Ill. App. 3d 900, 414 N.E.2d 1244.

■ Defendant, however, maintains that Browne's testimony concerning the blood could not be considered as probative evidence because no tests were performed to establish that it was his own blood. However, the failure to test the blood does not prevent a reasonable inference of culpability to be derived from the coincidence of finding

blood at the burglary site and on defendant's hands, while he was in close proximity, and carrying property stolen from the store.

Defendant attempted to explain that the blood on his hands was the result of 30 stab wounds he sustained at 3 a.m. that same morning. Defendant further testified that he neither called the police nor sought medical attention for his wounds. However, it is improbable that a person sustaining that many stab wounds would not seek immediate medical attention. Moreover, it is also highly improbable and contrary to common experience that a person, who has been stabbed 30 times, would still proceed to seek "day labor" employment within a couple of hours thereafter.

■ Defendant, however, cites *People v. Bryant* (1985), 130 Ill. App. 3d 532, 472 N.E.2d 889, as support for his position. In *Bryant*, a custodian of a school discovered that several items, including a television, had been stolen from the school. During his investigation, he found a yellow button on a window ledge. He did not know how long the button had been on the ledge. A few days after the theft, the defendant was picked up for questioning and it was discovered that his green coat was missing two yellow buttons that looked like the button found at the school. The stolen television was recovered from the home of two women who knew the defendant. There was evidence that other stolen merchandise was delivered to that house by someone other than the defendant.

The *Bryant* court held that the State failed to sustain its burden of proving the defendant guilty of burglary beyond a reasonable doubt. (*Bryant*, 130 Ill. App. 3d 532, 472 N.E.2d 889.) The court noted that the only evidence tending to connect the defendant to the crime was the missing buttons and the fact that the television was recovered from the house of defendant's friend, whom he occasionally visited. The court pointed out that there was no evidence as to how long the button had been at the school, and then found that even if the button was distinctive enough to support the conclusion that it came from defendant's coat, there was insufficient evidence to establish that the button fell onto the ledge during the commission of the burglary. 130 Ill. App. 3d at 535, 472 N.E.2d at 892.

The present case is unlike *Bryant* in that defendant was found in exclusive possession of stolen property one-half block away from the liquor store shortly after the crime occurred. In *Bryant*, however, the stolen property was neither found in defendant's possession, nor recovered immediately after the alleged burglary. Rather, the stolen television was recovered from a house that was not defendant's residence, days after the burglary occurred. Moreover, the cotenant of

that house testified that other stolen property was brought to the premise by someone other than the defendant, although she did not know who brought the stolen television to her house.

We therefore conclude that the State sustained its burden of proving the defendant guilty beyond a reasonable doubt of burglary. Accordingly, we affirm.

Affirmed.

COCCIA, P.J., and LORENZ, J., concur.